UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AYINDE FAIR,

                        Plaintiff,

       -v-

CAPTAIN JOHN WEIBURG, and
CORRECTION OFFICER GISELLE PRINCE,
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES,

                        Defendants.

Case No. 02-CV-9218 (KMK)

OPINION AND ORDER

---

Appearances:

Ayinde Fair
Wallkill, New York
Pro Se *Plaintiff*

Hillary A. Frommer, Esq.
Corporation Counsel for the City of New York
New York, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Plaintiff Ayinde Fair, a *pro se* prisoner, alleges that Defendants Captain John Weiburg

and Correction Officer Giselle Prince are responsible for injuries he suffered when he was

attacked by other inmates while incarcerated as a pre-trial detainee at Rikers Island Correctional

Facility.  Specifically, Plaintiff claims that Defendants violated his civil rights by failing to

prevent him from being stabbed by another inmate, placing him in an inadequate holding cell

after he was treated for his wounds, and failing to immediately provide him with a telephone call

to his family after the incident.  Plaintiff brings this lawsuit for damages pursuant to 42 U.S.C.

§ 1983 and related state causes of action.

Defendants have moved for summary judgment on the grounds that: (1) Plaintiff has

failed to demonstrate that Defendants acted with deliberate indifference in violation of his

constitutional rights; (2) Plaintiff failed to exhaust his administrative remedies; (3) Defendants

are entitled to qualified immunity; and (4) that the putative state law causes of action are time-

barred.  For the reasons discussed below, the motion is GRANTED.

## I.  Background

In November 1999, Plaintiff was incarcerated as a pre-trial detainee on Rikers Island

Correctional Facility, housed at the James A. Thomas Center 5 Block ("JATC 5 Block") "B"

side.  (Pl.'s 56.1 ¶ 2)  Though Plaintiff was identified by the Department of Correction as being a

member of the Bloods gang, (Defs.' 56.1 ¶ 3), Plaintiff denies such affiliation.  (Pl.'s 56.1 ¶ 3)

Plaintiff did not have a history of problems or altercations with other inmates, (Defs.' 56.1 ¶ 47)

and had neither concern for his safety nor fear for his life prior to an attack which occurred on

November 27, 1999.  (Defs.' 56.1 ¶ 41)  This was in spite of the fact that he had seen contraband

and weapons in JATC 5 Block and he had seen inmates with weapons in the common housing

area in JATC 5 Block.  (Defs.' 56.1 ¶¶ 42-43)  Plaintiff never expressed fear or complaints about

his safety, including the threat from other inmates, to either of the Defendants or any other

Department of Correction staff.  (Defs.' 56.1 ¶¶ 47-58)

Plaintiff and Defendants agree that at least one altercation occurred on the night of

November 27, 1999, though the sequence of events is disputed.  (Pl.'s 56.1 ¶ 4, Defs.' 56.1 ¶ 4)

According to Plaintiff, Plaintiff was assaulted by another inmate.  (Pl.'s 56.1 ¶ 5)  After this first

assault, Plaintiff alleges that he and other detainees were removed from the block and questioned

by Defendant Captain Weiburg.  (Pl.'s 56.1 ¶ 8)  After talking with the Captain, Plaintiff returned

to the block, where he alleges he was again assaulted by other inmates.  (Pl.'s 56.1 ¶ 9)  During

this second altercation, Plaintiff was stabbed three times in the back by an unidentified inmate.

(Pl.'s 56.1 ¶ 9)  Plaintiff claims he does not know who stabbed him.  (Defs.' 56.1 ¶ 24)  Plaintiff

alleges Defendant Officer Prince was not at her post in the "B" side at the time of the second

fight, and that had she been at her post she would have been able to prevent Plaintiff's injury.

(Pl.'s 56.1 ¶ 10)

Defendants' version of the facts differs from Plaintiff's.  According to Defendants, there

was only one fight, and Captain Weiburg never met with Plaintiff before he was stabbed.  (Defs.'

56.1 ¶ 11)  Additionally, Defendants assert that Officer Prince was at her post on the "A" side,

where she was relieving another officer who was taking a meal break, and was not assigned to

the "B" side post to which Plaintiff alleges she was assigned.  (Def.'s 56.1 ¶¶ 6-8)  Defendants

admit that Plaintiff was stabbed by another inmate.  (Defs.' 56.1 ¶ 11)  However, after Plaintiff

was stabbed, Officer Prince observed other inmates running with broom sticks in their hands but

she did not see Plaintiff at that time.  (Defs.' 56.1 ¶¶ 12-17)  Officer Prince then sounded her

personal alarm.  (Defs.' 56.1 ¶ 16)  The officer assigned to the "B" side post then arrived and

observed other inmates chasing Plaintiff and yelling to "trap him off."  (Defs.' 56.1 ¶ 20)

Captain Weiburg then arrived with the probe team, responding to Officer Prince's alarm.  (Defs.'

56.1 ¶ 26)  After investigation of the incident, it was discovered that there was contraband which

could be used as weapons in the JATC 5 Block.   (Defs.' 56.1 ¶ 40)

After the attack, Plaintiff was transported by stretcher from the JATC 5 Block to the

clinic.  (Pl.'s 56.1 ¶¶ 11-12; Defs.' 56.1 ¶ 30)  He was then transported to Elmhurst Hospital for

medical treatment, where he stayed the night.  (Pl.'s 56.1 ¶¶ 13-14; Defs.' 56.1 ¶¶ 31-32)

Plaintiff's wounds did not require stitches or surgery.  (Defs.' 56.1 ¶ 33)  Plaintiff returned to the

JATC the next morning, November 28, 1999, and was placed in a holding cell which Plaintiff

alleges contained only a narrow bench too small for him to lie down.  (Pl.'s 56.1 ¶ 16)

According to Plaintiff, he remained there all day until he was taken back to his cell in the JATC 5

Block for the night.  The next day, he was returned to the holding cell, after which he was

transferred to the George R. Vierno Center ("GRVC"), a separate prison on Rikers Island.  (Pl.'s

56.1 ¶¶ 16-20)  Plaintiff claims that while in the holding cell, he requested a phone call to his

family, but was never provided access to a phone.  (Pl.'s 56.1 ¶ 23; Defs.' 56.1 ¶ 66)  Plaintiff

did not, however, ask either of the Defendants personally for permission to make a phone call.

(Defs.' 56.1 ¶ 68)  Plaintiff did place a telephone call to his mother upon his transfer to the

GRVC.  (Defs.' 56.1 ¶ 67)

Plaintiff claims that he filed a grievance regarding his placement in the holding cell and

regarding the stabbing, but that he did not hear anything about those grievances.  (Pl.'s 56.1

¶ 21)  The Rikers' grievance procedures are spelled out in the Inmate Rule Book, which was

allegedly given to Plaintiff upon his entry to the Rikers facility.  (Defs.' 56.1 ¶¶ 70-75)  After the

incident, Plaintiff filed a Notice of Claim with the City of New York Office of the Comptroller.

However, because he filed it more than ninety days after the incident, the Comptroller rejected it

as untimely.  (Defs.' 56.1 ¶¶ 59-61; Pl.'s 56.1 ¶ 22)

## II.  Discussion

### A.  Standard of Review

To prevail on a motion for summary judgment, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits" must show that there is no

"genuine issue" as to any material fact. Fed. R. Civ. P. 56(c). The burden is on the moving party

to demonstrate the absence of a genuine issue of material fact. *Huminski v. Corsones*, 396 F.3d

53, 69 (2d Cir. 2005). All inferences must be drawn in favor of the non-moving party. *See id.* at

69-70. To avoid summary judgment, however, the non-moving party must offer "some hard

evidence" of its version of the facts, not merely rely on conclusory allegations or speculation.

*D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998); *see also McPherson v. N. Y.*

*City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to

defeat a motion for summary judgment."); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.

2002) ("[The non-movant] must do more than show there is some metaphysical doubt as to the

material facts" (internal quotations omitted)). Only when no rational jury could find in favor of

the non-moving party should a court grant summary judgment. *See Holtz v. Rockefeller & Co.,*

258 F.3d 62, 69 (2d Cir. 2002).

     Substantive law governs the materiality of the facts considered. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *D'Amico*, 132 F.3d at 149. When considering a summary

judgment motion, courts are not charged with weighing the evidence and determining its truth;

instead, courts must determine whether there is a genuine issue for trial. *See Castro v. Met.*

*Transp. Auth.*, 04 Civ. 1445, 2006 WL 1418585, at *2 (S.D.N.Y. May 23, 2006); *Westinghouse*

*Elec. Corp. v. N. Y. City Transit Auth.,* 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). The goal of

this inquiry should be to "isolate and dispose of factually insupportable claims." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323-24 (1986).

     *Pro se* parties are entitled to "extra consideration" and "special latitude" on summary

judgment motions. *Salahuddin v. Coughlin*, 999 F. Supp 526, 535 (S.D.N.Y. 1998). Therefore,

this Court must read a *pro se* litigant's supporting papers liberally, interpreting them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotations and citations omitted).  This does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  In particular, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lyerly v. Koenigsmann*, No. 04 Civ. 3904, 2006 WL 1997709, at *2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted).  The Local Rules of this Court require that affidavits in support of *pro se* motions to deny summary judgment must be submitted to the Court.  *See* S.D.N.Y. Civ. R. 56.1, 56.2.  Defendants complied with their obligation under Local Rule 56.2, and provided Plaintiff with notice of his obligations.  (Defs.' Local Rule 56.2 Statement)

       B.  Section 1983 and Constitutional Requirements for Prison Conditions

          1.  Applicable Standards

To state a section 1983 claim, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under the color of state law.  *See* 42 U.S.C. § 1983.  To be liable under section 1983, the defendant must have been personally involved in the alleged violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Tolliver v. Wilson*, No. 99 Civ. 9555, 2000 WL 1154311, at *5 (S.D.N.Y. Aug. 14, 2000).  Personal involvement, in this context, means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) ("A [section 1983] Plaintiff must thus allege a

tangible connection between the acts of the defendant and the injuries suffered"); *Davis v.*

*County of Nassau*, 355 F. Supp. 2d 668, 676 (E.D.N.Y. 2005) (dismissing pre-trial detainee's

section 1983 claim for failure to plead personal involvement of city officials).  "Liability may not

be premised on the *respondeat superior* or vicarious liability doctrines, nor may a defendant be

liable merely by his connection to the events through links in the chain of command." *Prince v.*

*Edwards*, No. 99 Civ. 8650, 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) (internal citations

and quotation marks omitted).

The Eighth Amendment, which applies to states under the Due Process Clause of the

Fourteenth Amendment, guarantees freedom from cruel and unusual punishment.  The Eighth

Amendment requires prison officials to "take reasonable measures to guarantee the safety of

inmates in their custody." *Hayes v. N. Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996);

*see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Prison officials have a duty to protect

prisoners from violence at the hands of other inmates since being violently assaulted in prison is

'simply not part of the penalty that criminal offenders pay for their offenses against society.'"

*Lee v. Artuz*, No. 96 Civ. 8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting

*Farmer*, 511 U.S. at 834).  However, "not . . . every injury suffered by one prisoner at the hands

of another . . . translates into constitutional liability for prison officials responsible for the

victim's safety." *Farmer*, 511 U.S. at 834.

Because the Eighth Amendment applies only to convicted prisoners, pre-trial detainees

are protected by the Due Process Clause of the Fourteenth Amendment.  *See Weyant v. Okst*, 101

F.3d 845, 856 (2d Cir. 1996); *Cunningham v. City of New York*, No. 04 Civ. 1998, 2006 WL

1520210, at *2 (S.D.N.Y. June 1, 2006).  Because "it is plain that an unconvicted detainee's

rights are at least as great as those of a convicted prisoner," *Weyant*, 101 F .3d at 856, courts have

applied the same "deliberate indifference" test developed under the Eighth Amendment to claims

involving pre-trial detainees arising under the Fourteenth Amendment.  *See Davis*, 355 F. Supp.

2d at 674; *see also Flemming v. City of New York*, No. 02 Civ. 6613, 2006 WL 898081, at *3

(E.D.N.Y. Mar. 31, 2006).

To successfully challenge prison conditions under the Eighth or Fourteenth Amendments,

a prisoner must show that the prison official or state actor, acting with deliberate indifference to

the prisoner's safety, subjected the prisoner to a sufficiently serious deprivation.  *See McPherson*

*v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999); *Ketterman v. City of New York*, No. 00 Civ. 1678,

2001 WL 579757, at *5 (S.D.N.Y. May 30, 2001).  The required showing has both objective and

subjective elements.  *See Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005).  With respect to

the objective element, the alleged deprivation must be sufficiently serious as to be "considered

cruel and unusual."  *Crawford v. Artuz*, 143 F. Supp. 2d 249, 258-59 (S.D.N.Y. 2001) (citing

*Farmer*, 511 U.S. at 834 ("[A] prison official's act or omission must result in the denial of the

minimal civilized measure of life's necessities.") (internal quotations omitted)).  This happens

when prison conditions present "a condition of 'urgency,' one that may produce death,

'degeneration,' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  Regarding the subjective

element, "the prison official involved must have acted with a 'sufficiently culpable state of

mind.'"  *McPherson*, 174 F.3d at 280 (quoting *Farmer*, 511 U.S. at 834).  This is satisfied by a

showing that the official acted with "deliberate indifference" towards Plaintiff's health or safety,

a state of mind that is "more blameworthy than negligence." *Farmer*, 511 U.S. at 834-35.

### 2. Application

#### a. Failure to Protect

Plaintiff alleges that Defendants violated his constitutional rights by failing to foresee and prevent the stabbing incident.  Failure-to-protect claims are treated as challenges to conditions of confinement and, accordingly, Plaintiff must demonstrate deliberate indifference. *See Edney v. Karrigan,* 69 F. Supp. 2d 540, 544 n.1 (S.D.N.Y. 1999).  Therefore, to prevail on his claim for failure to protect, Plaintiff must demonstrate that, objectively, the conditions of his incarceration posed a substantial risk of serious harm and, subjectively, that the named defendants acted with deliberate indifference. *See Farmer,* 511 U.S. at 834.  Plaintiff fails to meet this burden.

In failure-to-protect cases, "a prison official acts with deliberate indifference and thus 'has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'"  *Lee,* 2000 WL 231083, at *5 (quoting *Hayes*, 84 F.3d at 620).  In this case, Fair never informed either Captain Weiburg or Officer Prince that he feared for his safety.  He also did not request a transfer, even though he evidently observed contraband and weapons in the JATC 5 Block prior to the attack.  (Defs.' 56.1 ¶¶ 41-2, 49-52, 55-58)  Indeed, upon arrival at Rikers in October 1998, Plaintiff indicated to Rikers officials that he required no special security or protection from the general inmate population.  (Defs.' Mot. for Summ. J. Ex. M)  Thus, even if, as Plaintiff alleges, there was another altercation that preceded the one in which Plaintiff was injured, there is nothing in the record to suggest that returning Plaintiff (and the other inmates) to the area near the television set in the JATC 5 Block placed him (or any of the other inmates) in

grave danger.  Indeed, Plaintiff has acknowledged that he was not required to go back to the

Block where the first fight allegedly took place.  (Defs.' 56.1 ¶¶ 44-47)  Moreover, Plaintiff

never provided information about who attacked him (Defs.' 56.1 ¶ 35) and never alleged that the

attack was a pre-meditated effort to harm him.  The investigation of the incident revealed that

Plaintiff was injured in a fight over control of the TV.  (Defs.' 56.1 ¶ 38)  Thus, based on the

unrefuted evidence in the record, the most reasonable inference is that the altercation occurred

spontaneously.  Further, the undisputed evidence demonstrates that Defendants and the other

officers responded quickly and appropriately to the altercation.  (Defs.' 56.1 ¶¶ 14-16, 18, 21-23)

Thus, Plaintiff has failed to satisfy even the objective component of his due process claim.  *See*

*Brown v. Picarelli*, 96 Civ. 1222, 2003 WL 1906180, at *6-7 (S.D.N.Y. Apr. 15, 2003) (report

and recommendation) (holding that plaintiff failed to establish substantial risk of harm where

plaintiff never expressed concern for safety to defendants), *adopted by* No. 96 Civ. 1222, 2003

WL 21297287 (S.D.N.Y. June 4, 2003); *DeSulma v. City of New York*, 98 Civ. 2078, 2001 WL

798002, at *6-7 (S.D.N.Y. July 6, 2001) (report and recommendation) (finding plaintiff failed to

show substantial threat of serious harm, even though assailants had threatened plaintiff before

altercation); *Ketterman*, 2001 WL 579757, at *6 ( "The plaintiff does not allege that any

corrections officer was specifically aware of any substantial risk of harm to him, or aware that

another inmate in the general population posed a substantial risk of harm to inmates generally, or

to some subgroup of inmates, nor does he allege that there were any general or specific threats

made against him, that there was any history of violence or ill-will between himself and gang

members generally or other inmates generally, or his assailants in particular . . . let alone that he

informed a prison official of any perceived risk to him. . . . Thus, we conclude that plaintiff has

failed to allege facts that could sustain a claim for deliberate indifference.").

To satisfy the subjective element of the prison conditions test, the Plaintiff must show that the accused prison official possessed a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. This is satisfied by a showing that the official acted with a state of mind similar to that of reckless disregard—one where the officials know of and disregard an excessive risk to the inmate's health and safety. *Id*. at 836-37.

When state of mind is at issue, courts must exercise caution in granting summary judgment. *See Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir. 1991) (citing *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Thus, this Court has carefully considered whether there is sufficient evidence in this case that could support a jury's verdict that Defendants acted with deliberate indifference, but concludes that there is no such evidence. First, as noted above, there is no evidence either that Plaintiff believed himself to be in any danger before he was attacked, let alone that he communicated any such concern to either Defendant. Moreover, at oral argument, Plaintiff stated that even if Defendants had been aware of some general risk, particularly after the supposed first altercation, their failure to act was "poor judgment," not deliberate indifference or a reckless disregard of quantifiable risks.[1] (Hr'g Tr. 26-27, Oct. 28, 2005). Accordingly, this case is no different than the others where courts "routinely deny deliberate indifference claims based on surprise attacks." *Zimmerman v. Macomber*, 95 Civ. 0882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001); *see also Grant v. Burroughs*, No.

---

[1]Obviously, the Court does not expect a *pro se* defendant to argue the specifics of a legal standard such as "reckless disregard of quantifiable risks." However, at oral argument, Plaintiff could not marshal any evidence that Captain Weiberg knew of, or ignored, risks to Plaintiff's safety and security.

96 Civ. 2753, 2000 WL 1277592, at *2-3 (S.D.N.Y. Sept. 8, 2000) (dismissing deliberate

indifference claim where plaintiff could not show defendants knew of or disregarded risk of

attack); *King v. Dep't of Corr.*, No 95 Civ. 3057, 1998 WL 67669, at *6 (S.D.N.Y. Feb. 18,

1998) (dismissing case where defendant did not have any information warning of imminent

attack on plaintiff).

Second, Plaintiff's claim that Officer Prince's absence from the "B" side post fails to

demonstrate deliberate indifference.  Plaintiff presents *no* evidence that Officer Prince was, in

fact, assigned to the "B" side post and, therefore, was not in a position to prevent the attack on

Plaintiff.  In any event, the mere failure to post a guard does not constitute a constitutional injury

which can be relieved via a section 1983 action, even where the presence of a guard would have

prevented the attack.  *See Grant*, 2000 WL 1277592, at *3 (holding that failure to be at assigned

post was "negligent" but not sufficient to sustain an action under section 1983); *Jaipersaud v.*

*A.R.D.C. Building # C-74*, 95 Civ. 3550, 1996 WL 1086521, at *3 (E.D.N.Y. June 19**,** 1996)

(holding that failure to post a guard in mess hall where fight broke out was insufficient to sustain

a deliberate indifference claim).  Thus, Plaintiff has failed to substantiate his claim that

Defendants violated his constitutional rights by failing to protect him.

> b.  Failure to Provide Adequate Post-Hospitalization Accommodations
>     and Telephone Call

Plaintiff also claims his constitutional rights were violated when, after he was released

from the hospital the day after the altercation, he was placed in a holding cell that had no bench

sufficiently wide enough to permit him to lie down.  According to Plaintiff, he was in this cell for

most of two consecutive days.  (Pl.'s 56.1 ¶¶ 16-20)  Plaintiff also claims that his rights were

violated because he was not allowed to call his family, even though he requested to do so when in the holding cell.

Plaintiff's claims are wanting on several levels.  First, Plaintiff does not allege, let alone substantiate, any colorable basis to believe that these deprivations were "sufficiently serious" to present "a condition of urgency" that Plaintiff was facing death, degeneration, or extreme pain. *Chance*, 143 F.3d at 702.  Plaintiff says only that he was "stabbed three times," and that these injuries made it difficult for him to raise his hands.  (Pl.'s 56.1 ¶ 11)  In his deposition, however, the Plaintiff admitted that his wounds were treated immediately after the accident with some peroxide and a "Band-Aid" in the hospital clinic.  (Defs.' Mot. for Summ. J. Ex. D 113-15)  He was then taken to a hospital, where his wounds were re-examined.  *Id*.  Plaintiff does not allege that he was denied treatment; he merely alleges that his placement in the holding cell was uncomfortable.  This is a far cry from death, degeneration, or extreme pain.  Indeed, while his wounds were no doubt unwanted and uncomfortable, they required no surgery or stitches. (Defs.' 56.1 ¶ 33)  Courts in the Second Circuit have held that injuries much more serious than the Plaintiff's, including broken bones, bleeding wounds, and degenerative arthritis, do not constitute "serious injury." *See Rodriguez v. Mercado*, 00 Civ. 8588, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (report and recommendation) (listing cases).  Thus, Plaintiff has failed to demonstrate how his medical condition was worsened in any way because of the time spent in the holding cell. *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (holding there was no constitutional violation from when pre-trial detainee was placed in holding cell for 14 hours without treatment of  "uncomfortable" puncture wounds).

Plaintiff's claim that the denial of phone privileges might constitute "serious injury" is

even farther afield.  Nothing in Plaintiff's Complaint provides any basis for finding that the

temporary denial of his desire to use the phone to call his mother constituted an urgent condition

that might approach the "serious injury" requirement for an Eighth Amendment constitutional

tort.  Plaintiff alleges no injury at all from this denial, only the inability to inform his relatives of

his condition.  Nor can Plaintiff claim any specific constitutional injury from the denial of his

request to use the phone.  "Prisoners do not have an absolute right to make phone calls."

*Blackshear v. Coughlin*, 93-CV-971, 1996 U.S. Dist. LEXIS 22081, at *7 (N.D.N.Y. Jan. 18,

1996); *see also State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 n.2 (7th Cir. 1983)

("We find no Sixth Amendment right to place a phone call, be it to an attorney or family

members."); *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) ("[T]here is also no

constitutional requirement that a detainee be permitted a telephone call upon completion of

booking formalities.").  Regardless, after a few days Plaintiff was able to contact his mother by

phone.  (Defs.' Mot. for Summ. J. Ex. D 150)  Even if Plaintiff could claim that a total denial of

phone privileges was "serious injury," that is not the case here.

Assuming the placement of Plaintiff in the holding cell and the denial of his request to

telephone his family violated the Constitution, Plaintiff's claim is fatally undermined by his

failure to allege that either Defendant was responsible for these conditions.  In fact, at oral

argument, Plaintiff conceded that Officer Prince had nothing to do with denying him a phone call

or placing him in an inadequate cell, and that Captain Weiburg's involvement was, at most,

simply as a supervisor of the officers who actually engaged in the alleged violations.  A

supervisor may be personally involved in a constitutional violation of a prisoner if: (1) the

supervisor participated directly in the alleged constitutional violation; (2) the supervisor, after

14

being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the supervisor created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the supervisor was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the supervisor exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff has neither alleged nor provided facts which would support a finding of Captain Weiburg's personal involvement on any of these bases.  Therefore, Plaintiff's section 1983 claims against the Defendants regarding the post-hospitalization conditions fail.

C.  Qualified Immunity

In addition to attacking Plaintiff's ability to prove his causes of action, Defendants also assert that summary judgment should be granted because they are protected by qualified immunity.  Government officials, such as Defendants, are protected from suits against them in their individual capacities where their conduct does not violate any clearly established rights of which a reasonable person would have known.  *See Saucier v. Katz*, 533 U.S. 194, 199 (2001); *see also Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005).  Where it is "'objectively reasonable for the public official to believe his acts did not violate those [clearly established] rights,'" qualified immunity is available.  *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991)).

A right is "clearly established" for the purposes of qualified immunity analysis where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998).

15

The Second Circuit has found the right of prisoners to be free from deliberate indifference to serious medical needs under the Eight Amendment (and therefore, for pre-trial detainees, the Fourteenth Amendment as well) is a clearly established right. *See id.* at 74 (holding failure to protect inmate from asbestos is a violation of the Eighth Amendment). However, there must be a violation of said right to waive qualified immunity. Where the plaintiff does not show a violation of a constitutional right, a court need not make further inquiry into whether or not the officers have qualified immunity. *Saucier*, 533 U.S. at 201. This is the case here. As explained above, Plaintiff has failed to establish a prima facie case that Defendants violated his Fourteenth Amendment rights.

However, even if Plaintiff established that a constitutional right was violated, Plaintiff cannot show that Defendants' actions were unreasonable. Qualified immunity is waived by a defendant who acts in a manner that a reasonable person would have understood was unreasonable under the current law. *See Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). Therefore, even an officer's mistake of law would not waive qualified immunity if the mistake were reasonable. *See Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). Plaintiff has not alleged any unreasonable actions by Defendants in the case at hand. Indeed, even granting Plaintiff the benefit of the doubt, Plaintiff's allegations fail to demonstrate that it was unreasonable for Defendants to fail to prevent the attack on Plaintiff, given that Defendants had no notice that an attack would happen at all and, more specifically, that Plaintiff would be the target. Moreover, Plaintiff has failed to cite any case law establishing that his constitutional rights were clearly violated when he allegedly was placed in a cell with a narrow bench, or when he allegedly was not given a phone to notify his family about the fight. *See supra.*

16

Even if some constitutional violation occurred when Defendant was placed in the holding cell, Plaintiff does not allege it was the named Defendants who placed him there.  There is no respondeat superior liability under section 1983.  "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam). Even when a supervisory official is informed of a problem, subsequent inaction is insufficient to create section 1983 liability for the supervisory officer. *See Hernandez v. Goord*, No. 02 Civ. 1704, 2006 WL 2109432, at *8 (S.D.N.Y. July 28, 2006) (citing cases).  Plaintiff alleges only that Captain Weiburg yelled at and attempted to handcuff Plaintiff on the day he was stabbed, not that Captain Weiburg placed him in the cell the following day.  (Pl.'s 56.1 ¶ 11)  Thus, Plaintiff's allegations fail to make out a cause of action against Captain Weiburg based only on his supervisory role.[2]

D.  State Law Claims

While Plaintiff never explicitly raises any state law claims, the Court has liberally construed the allegations in his Complaint to include certain state law tort causes of action. Defendants Captain Weiburg and Officer Prince argue that any state law claims are barred by failure to follow New York notice-of-claim requirements and statutes of limitation.  Plaintiff believes the typical three-year statute of limitations for torts in New York should apply to such claims.  However, because Defendants are city employees, Plaintiff must comply with New

---

[2]Because the Court grants Defendants' summary judgment motion on the basis of insufficient evidence to make out a section 1983 claim and qualified immunity grounds, the Court does not address the closer question of whether Plaintiff's case falls for failure to exhaust his administrative remedies.

York's notice-of-claim rules and a specific statute of limitation.  *See Mejia v. City of New York*, 119 F. Supp. 2d 232, 256-57 (E.D.N.Y. 2000) (holding that suits for torts arising from conduct of police officers in the course of their employment must be filed in accordance with New York notice-of-claim statutes); *see also Lavalliere v. Dep't of Corr.*, 759 N.Y.S.2d 8, 9 (App. Div. 2003) (dismissing suit against city by prisoner for failure to abide by notice of claim statute); *Visconti v. City of New York*, 359 N.Y.S.2d 307, 308-09 (App. Div. 1974) (holding that 90 day notice of claim requirement must be abided by even when statute of limitations for underlying action is tolled).

In federal courts, state notice-of-claim statutes apply to state law claims.  *See Hardy v. N. Y. City Health & Hosp.*, 164 F.3d 789, 793 (2d Cir. 1999); *Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.").  In New York, the statute of limitations on a tort claim against a city or a city employee is one year and ninety days after the occurrence on which the claim is based.  *See* N.Y. Gen. Mun. § 50-i(1)(c); *see also Smalls v. Fraser,* 05 Civ. 6575, 2006 WL 2336911, at *5 (S.D.N.Y. Aug. 11, 2006); *Wilson v. City of New York*, 04 CV 1906, 2005 WL 2387585, at *2 (E.D.N.Y. Sept. 28, 2005).  However, no action can be brought against a city or any employee or agent of the city unless written notice of claim has been served upon the prospective defendant within ninety days.  N.Y. Gen. Mun. §§ 50-i(1)(a), 50-e(1)(a).  Plaintiff served no notice of claim, and therefore, all state law causes of action which could be implied from his Complaint are time-barred.  *See Lavalliere*, 759 N.Y.S.2d at 9; *Visconti*, 359 N.Y.S.2d at 308-09.

Furthermore, Plaintiff is further ineligible to cure his failure to serve notice of claim.

18

Application for leave to file a late notice of claim may be made only in state, not federal, court. *See Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."); *Warner v. Village of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("[F]ederal courts do not have jurisdiction to permit the filing of a late notice of claim."). Thus, Plaintiff cannot request such relief before this Court. Permission from the state court must be sought within the one year and ninety day period during which a plaintiff may bring his claim. N.Y. Gen. Mun. § 50-e(5)(a). As over one year and ninety days have passed since Plaintiff's injury, he cannot cure his failure to serve notice of claim.

### III.  Conclusion

Defendants' Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated:            September 26, 2006
                  New York, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

19

Service List

Ayinde Fair
(#01A3746)
Shawangunk Correctional Facility
P.O.Box 700
Wallkill, NY 12589
PRO SE

Hillary A. Frommer, Esq.
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
Fax: (212) 788-9776